**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No.: 6:26-cv-01477-CEM-NWH

HOME1ST LENDING, LLC and
THERESA LENTINI-LOPEZ,

Plaintiffs,

v.

FIRST HORIZON BANK,

Defendant.
_________________________________________/

**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant, First Horizon Bank ("First Horizon" or "Defendant"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint and Demand for Jury Trial (the "Amended Complaint") filed by Plaintiffs Home1st Lending, LLC ("Home1st") and Theresa Lentini-Lopez ("Ms. Lentini-Lopez") (collectively "Plaintiffs"). In support, Defendant states as follows:

**PRELIMINARY STATEMENT**

This case arises not from any failure by First Horizon, but from a criminal fraud that exploited security breakdowns within Home1st. Home1st fell prey to a social-engineering and impersonation fraud that resulted in Home1st personnel disclosing their one-time passcodes and secure token codes for Home1st's business banking

account at First Horizon to a third-party bad actor. (ECF No. 1-1, at ¶ 34.) As a result of Home1st's disclosure of its confidential account information to a third party, the bad actor was able to initiate two ACH transfers and one wire transfer from Home1st's business account at First Horizon. Plaintiffs now bring suit to recover the losses caused by their own disclosure of secure account information to the bad actor. (*Id.*)

Like the original complaint, the Amended Complaint asserts eight causes of action concerning Home1st's alleged loss, but Plaintiffs fail at every turn to state a proper claim or provide a legally valid basis to proceed against First Horizon. Between pleading defects, lack of standing, Florida's Independent Tort Doctrine, the admitted existence of governing written agreements between the parties, preemption, and fundamentally improper causes of action, each of Plaintiff's claims must be dismissed. Furthermore, as this is now Plaintiffs' second attempt at stating a valid claim, further amendment would be futile, and this action should be dismissed with prejudice.

## ALLEGATIONS IN PLAINTIFFS' COMPLAINT

In their original pleading, Plaintiffs conceded that they were duped by a fraudster into disclosing one-time passcodes and token and account information, allowing the unauthorized transfers to occur. (ECF No. 1-1, at ¶¶ 2, 23-25, 32-34.) Every one of these allegations has been deleted from the amended complaint, leaving the issue as background but now implied rather than expressly acknowledged.

Plaintiffs allege that on November 20, 2025, a fraudster impersonating First Horizon personnel contacted Home1st by phone claiming that Home1st was being defrauded. Home1st personnel purportedly observed unauthorized transfers in First

Horizon's portal during the call. (ECF No. 18, at ¶¶ 37-41.) Plaintiffs claim to have contacted First Horizon Branch Manager Greg Gorney while the fraud was occurring to indicate that they were on the phone with First Horizon's fraud department and that there had been fraudulent wires on their account, and they allege that Mr. Gorney did not advise them of any concerns or investigate further. (*Id.* at ¶¶ 43-49.) Plaintiffs allege a $25,000 wire (*Id.* at ¶¶ 51-54) and a $380,000 ACH batch transfer were unauthorized (*Id.* at ¶¶ 54-58), claiming these transactions were inconsistent with their past activities and that First Horizon had "contractual authority and technical capability to delay or refuse transactions, restrict access, and apply transaction limits when it suspected compromised security procedures or fraudulent activity" (*Id.* at ¶¶ 57, 59-60).

Plaintiffs allege they realized they had been defrauded the following day and contacted First Horizon, accusing First Horizon of a delayed and fragmented response that "prevented prompt use of available recall, reversal, account-restriction, credential-disabling, receiving-bank, and fraud-escalation procedures." (*Id.* at ¶¶ 62-73.) Plaintiffs claim that on November 24 and 25, 2025, a First Horizon employee, Gina Baez, told Ms. Lentini-Lopez that the ACH transactions had been reversed, that new accounts would be opened to restore online access, and that First Horizon had committed errors and ignored red flags and would "take care of the situation." (*Id.* at ¶¶ 74-76, 79-80.) Plaintiffs claim they relied on these representations and "continued awaiting First Horizon's response, deposited funds, funded payroll and operating expenses, and did not immediately pursue every alternative funding or recovery measure available to them," noting that Home1st deposited $106,335.35 to cover payroll (*Id.* at ¶ 77) and

Ms. Lentini-Lopez contributed $50,000.00 to cover expenses along with unspecified "other financial burdens." (*Id.* at ¶¶ 82-85.) First Horizon then purportedly "subsequently reversed, failed to maintain, or failed to complete substantial credits associated with the ACH reversal process." (*Id.* at ¶¶ 86-87.)

Plaintiffs bring several causes of action against First Horizon, some by Home1st others by Ms. Lentini-Lopez, including under Sections 670.202 and 670.204 of the Florida Uniform Commercial Code ("UCC"), for breach of contract, gross negligence, negligent misrepresentation, promissory estoppel, and declaratory judgment.

## ARGUMENT AND MEMORANDUM OF LAW

### A. Standard of Review.

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the facial sufficiency of a complaint. Although a complaint challenged by an opposing party need not contain detailed factual allegations, a plaintiff must provide the "grounds" for his entitlement to relief, amounting to more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. <u>Ms. Lentini-Lopez Has No Standing to Sue in Any Capacity</u>.**

Ms. Lentini-Lopez attempts to plead causes of action under Counts V and VII against First Horizon, bringing claims for negligent misrepresentation and promissory estoppel. However, the Amended Complaint lacks sufficient allegations to support any argument that Ms. Lentini-Lopez has standing to sue First Horizon individually or on behalf of Home1st. Absent standing, Ms. Lentini-Lopez's claims cannot proceed.

"A party who alleges standing bears the burden of clearly alleging facts to demonstrate that she is the proper one to invoke judicial resolution of a dispute. If a party fails to make those necessary factual allegations, the party has no standing." *Koziara v. City of Casselberry*, 347 F. Supp. 2d 1223, 1227 (M.D. Fla. 2003) (internal citation omitted). To satisfy constitutional standing requirements: (1) the party must have suffered an injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized and actual and imminent rather than conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of that is fairly traceable; and (3) it is likely that the injury will be redressed by a favorable decision in litigation. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005). Each element of standing must be separately pled and supported by

the plaintiff like any other element of their case, clearly and plausibly alleging, rather than in a conclusory fashion, a concrete injury. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020); *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).

Both of Ms. Lentini-Lopez's claims are premised on statements made by Ms. Baez to Ms. Lentini-Lopez on November 24 and 25, 2025, specifically that the subject transfers had been reversed, Home1st's accounts would be restored, and First Horizon would take care of the situation. (ECF No. 18, ¶¶ 135-138, 143, 157-160.) Plaintiffs allege that these statements were false and amounted to definite promises and that Ms. Lentini-Lopez relied upon them by depositing $50,000 of her money into Home1st's account to help cover expenses along with unspecified "undertaking additional personal financial obligations that she otherwise would not have undertaken, or would have addressed differently." (*Id.*) However, by Plaintiffs' own admission, these statements were made to Ms. Lentini-Lopez in her capacity as Home1st's CEO and concerning the theft from Home1st's account. Plaintiffs do not allege that any statements were made to her in her individual capacity, concerning any individual interest she had, or with any intent that she would personally rely on them or amounting to any promise to her. Case law is clear that an officer or shareholder of a company does not have standing to pursue a claim in their own right for injury to the company absent some special harm specific to her or a special duty.[1] There is no

[1] *See, e.g., Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 608–09 (11th Cir. 1984); *Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL

allegation that, other than through Home1st, Ms. Lentini-Lopez was owed any duty[2] or had any involvement in the events in question other than in her capacity as Home1st's officer and representative. Absent a statement being made to a person and where the defendant owed a duty of care to that person, a negligent misrepresentation claim cannot exist. *See Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1311–12 (S.D. Fla. 2025). Likewise, a specific promise must be made to the person in question for promissory estoppel to exist; indefinite promises are entirely insufficient as a matter of law.[3] Additionally, the promisor must reasonably expect their statements to cause some action by the other person, which cannot be plausibly stated here as to any statements made to Ms. Lentini-Lopez. *See Myers v. 3073 Horseshoe Drive, LLC*, No. 2:23-CV-95-JES-NPM, 2024 WL 4040834, at *1 (M.D. Fla. Sept. 4, 2024).

Even if there were any such well-pled allegations, Ms. Lentini-Lopez's claims still fail for lack of standing to sue. The account at issue was Home1st's account, and Ms. Lentini-Lopez allegedly deposited money in that account to help cover Home1st's

---

1270266, at *3 (M.D. Fla. Apr. 1, 2010) (concerning claims brought by a corporation and its sole officer and director, "While the complaint alleges damages to each SDC and Henry Rodriguez, it fails to allege any specific harm that came to Henry Rodriguez personally and independently from that which came to SDC as a result of the calling of the loan. Cross-Plaintiffs must allege and provide facts that support that Rodriguez has suffered an independent harm and thus would have standing to join this complaint.").

[2] In fact, since there is no allegation that she was a customer or accountholder of First Horizon, Florida law is clear that First Horizon does not owe her any duty as an individual. *See, e.g., Sroka v. Bank*, No. 2006-CA-001117, 2006 WL 2535656, at *1 (Fla. Cir. Ct. Aug. 31, 2006); *GSR Markets Ltd. v. McDonald, et al.*, No. 23-11222, 2024 WL 3311315, at *1 (11th Cir. 2024); *Herrera v. TD Bank, N.A.*, 682 F. Supp. 3d 1271, 1275 (S.D. Fla. 2023); *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017).

[3] *Gutierrez v. Martin Eng'g*, No. 05-80232-CIV, 2007 WL 9702235, at *1 (S.D. Fla. Mar. 16, 2007) (standard not satisfied by allegation of "an indefinite promise that an employee would be "taken care of" or that there would be a "lasting partnership"); *Camina Servs., Inc. v. Shell Oil Co.*, 816 F. Supp. 1533, 1540 (S.D. Fla. 1992).

expenses, making any loss Home1st's loss. This case is on all fours with *Warter v. Boston Securities, S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787 (S.D. Fla. Mar. 22, 2004), in which the plaintiffs brought a complaint alleging false representations with respect to their investments, including for negligence and fraud. *Id.* at *4. The defendants moved to dismiss for lack of standing, noting that the plaintiffs' funds were deposited in a corporate account, and so any financial injury was to the company rather than the individuals. *Id.* at *9. The court agreed, noting that Florida law did not allow standing in this context: if "the Warters' investments were deposited in the Gulden 403 account, the Warters would lack standing," and "if discovery reveals that Plaintiffs only had corporate accounts (of whatever number) with BSEC, and that all of their funds were deposited into one or more of these accounts, they will lack standing to bring this action." *Id.* at *9-10.

For these reasons, Ms. Lentini-Lopez's claims in Counts V and VII should be dismissed for lack of standing to bring suit.

## C. <u>Home1st's UCC Claim (Count I) Fails as a Matter of Law</u>.

Home1st's first claim is pursuant to Sections 670.202 and 670.204 of the Florida Uniform Commercial Code ("UCC"), seeking a refund of the subject transactions, largely premised on First Horizon's alleged failure to stop and reverse the transactions after the fraudster gained access to Home1st's account. However, as Plaintiffs do not plead that the fraudster gained access through any error on First Horizon's part or with respect to its security procedures, Plaintiffs have failed to state a valid UCC claim, and Count I should be dismissed.

Pursuant to Fla. Stat. § 670.204, a receiving bank is obligated to refund a payment order in the name of its customer when the payment order was not authorized or effective, as defined within Fla. Stat. § 670.202. Section 670.202 notes that an order is effective when it has been verified pursuant to a security procedure, defined within Section 670.201 as agreed procedures between the customer and the bank for verifying the identity of the customer as to payment orders and detecting errors.

In the recent case of *Hegira Health, Inc. v. Fifth Third Bank NA*, No. 2:25-CV-12481, 2026 WL 2195887 (E.D. Mich. July 30, 2026), the court considered circumstances in which a bank customer provided login credentials and administrator rights to an imposter, resulting in unauthorized wire transfers from the customer's bank account. *Id.* at *1. The plaintiff claimed violations of UCC Article 4A, alleging that the bank purportedly was "not acting in good faith or compliance with commercially reasonable security procedures to flag and prevent the fraudulent wire transfers from Hegira's account." *Id.* at *2. In response, the defendant contended that no valid UCC claim existed, as the claims concerned internal fraud response mechanisms rather than agreed-upon security procedures. *Id.* The security procedures in question were the same form of credentials here. *Id.* at *4. However, the complaint was targeted at the defendant's fraud response procedures, which were not within the scope of the bank's security procedures. Indeed, the court recognized that under the UCC, such security procedures were the means of authenticating customer identity and preventing errors rather than reactive measures in response to fraudulent transfers. *Id.* at *5-6. The court concluded:

> At bottom, Hegira's situation is unfortunate. A third-party defrauded Hegira of a significant sum. But Hegira does not allege that the third-party obtained access to Hegira's accounts as the result of a failure on Fifth Third's part. Instead, it takes issue with Hegira's responses after the third-party began initiating transactions—none of which were the subject of any agreement between Hegira and Fifth Third. In so doing, Hegira aims to hold Fifth Third liable for certain procedural failures outside of the UCC. Therefore, this Court will grant the motion to dismiss and dismiss the case.

*Id.* at *6.

Though Plaintiffs' allegations in their original complaint were far more detailed concerning their direct role in providing their security credentials to the fraudsters to allow the fraud to occur, Plaintiffs continue to acknowledge that the security procedures in question involved token identification (ECF No. 18, ¶ 34). Notably, the Treasury Management Services Master Agreement on which Plaintiff otherwise acknowledges and relies (*Id.* at ¶¶ 22-23, 25, 103) states in Section 6.1 of its General Terms that "[t]he Security Procedures may involve a security code, password, personal identification number, user identification technology, certificate, or other means, or method of authentication, identification or verification (the 'Security Credentials')."[4] Florida courts have previously found security-credential-based verification measures commercially reasonable. *Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 740 F. Supp. 3d 1186, 1199 (M.D. Fla. 2024) ("For the reasons set forth below, independent of Plaintiffs' admission, the Court finds that the required use of a username, password, and token code, under these circumstances, was commercially reasonable."). Plaintiffs

[4] *See* Ex. A, General Terms, Section 6.1.

do not accuse First Horizon of allowing the fraudster access to the account or claim that the bank's security procedures failed in this regard; Plaintiffs instead claim that First Horizon purportedly breached duties thereafter owed to Home1st.[5] Count I fails to state a proper claim under the UCC, and so it should be dismissed.

### D. Home1st's Breach-of-Contract Claim (Count II) Fails as a Matter of Law.

Home1st's breach-of-contract claim is fatally flawed in that it fails to meet basic pleading requirements under the Federal Rules of Civil Procedure. Even if Home1st satisfied the pleading standards, the claim would be preempted. Consequently, Home1st's breach-of-contract claim must be dismissed.

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief, providing a defendant fair notice of the claims and grounds against it, and requiring more than labels and conclusions or a formulaic recitation of the elements. *Twombly*, 550 U.S. at 555. "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."[6]

Home1st repeatedly runs afoul of these requirements. Under Florida law, a breach-of-contract claim must plead and establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v.*

---

[5] And, as discussed below, Plaintiffs rely heavily on purported notice to First Horizon through communications to a local branch manager despite never informing him that the security credentials had been compromised and despite the terms of the agreements specifying how notice should occur.

[6] *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *Allah El v. Avesta Homes, LLC*, 520 F. App'x 806, 808 (11th Cir. 2013) ("Legal conclusions must be supported by factual allegations, and pleadings that merely contain conclusions do not demonstrate sufficient grounds for relief.").

*T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) **sufficient specification of the essential terms**." *Id.* (emphasis added). A plaintiff must allege the specific contractual provision that was allegedly breached.[7] Moreover, when a plaintiff alleges that multiple contracts were breached, it is an impermissible shotgun pleading, particularly when—as here—the complaint lumps all the purported breaches in a single count with no specifications of any of the agreements' terms.[8]

Plaintiffs acknowledge maintaining a banking relationship with First Horizon involving multiple accounts and making use of services with respect to digital banking, treasury management, ACH, and wire-transfer, and Plaintiffs further concede that Home1st relationship with First Horizon is governed by "the Treasury Management

[7] *See, e.g., Gladney by & through Gladney v. Consumers Credit Union*, No. 23-13959, 2024 WL 2797914, at *5 (11th Cir. May 31, 2024); *Anderson v. Branch Banking & Tr. Co.*, 56 F. Supp. 3d 1345, 1352-53 (S.D. Fla. 2014); *Brown v. Capital One Bank (USA), N.A.*, No. 15-60590-CIV, 2015 WL 5584697, at *3 (S.D. Fla. Sept. 22, 2015); *Gentry v. Harborage Cottages-Stuart*, Case No. 08-14020-CIV, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008); *Puls v. Am. Airlines, Inc.*, No. 8:17-CV-1024-T-36TGW, 2018 WL 11256028, at *3 (M.D. Fla. June 11, 2018).

[8] *See, e.g., Abdulla v. S. Bank*, No. 22-12037, 2023 WL 2988135, at *2 (11th Cir. Apr. 18, 2023) ("Further, Abdulla's breach-of-contract claim identifies breaches of multiple contracts in one breach of contract claim. While we recognize that Abdulla's amended complaint is not the most egregious shotgun pleading, **it is nonetheless a shotgun pleading**, and our review is confined to searching for an abuse of discretion.") (emphasis added); *Acheron Portfolio Tr. v. Mukamal as Tr. of Mut. Benefits Keep Policy Tr.*, No. 18-25099-CIV, 2019 WL 12304839, at *7 (S.D. Fla. Aug. 21, 2019) (finding that the complaint violated Fed. R. Civ. P. 10(b) and failed to satisfy pleading standards as it "states factual allegations regarding multiple breaches of different contracts, yet there is one count for breach of contract that lumps them all together."); *Filippova v. Mogilvesky*, No. 18-80044-CIV, 2018 WL 7825449, at *3 (S.D. Fla. Aug. 29, 2018) ("If there are multiple contracts that were breached, the complaint ought to plead each breach of contract separately and identify with whom the contract was entered**, the relevant terms and what terms were breached."**) (emphasis added); *Declan Flight, Inc. v. Textron Eaviation, Inc.*, No. 5:23-CV-301-GAP-PRL, 2023 WL 9104757, at *3 (M.D. Fla. Nov. 22, 2023).

Services Master Agreement and Service Terms, the Digital Banking Agreement,[9] the applicable account agreements, Service Documents, security-procedure documents, user-entitlement records, and transaction-limit records, including versions maintained by First Horizon and applicable during November 2025 (collectively, the 'Banking Agreements')." (ECF No. 18, ¶¶ 22-23, 25, 103.) Count II relies on eight separate alleged breaches of these "agreements," again without identifying which purported breaches concern which agreements or what part(s) of the agreements were breached.[10] (*Id.* at ¶ 109.) Under the Eleventh Circuit precedent and decisions from this Court and the Southern District of Florida discussed above, these allegations fail to satisfy the most basic Rule 8 pleading requirements, requiring Count II's dismissal.

Even assuming for the sake of argument that Home1st's allegations were sufficient to state a claim for breach of contract, the claim must still be dismissed because it is preempted by the UCC. Article 4A of the UCC is codified in Fla. Stat. § 670.102, *et seq*. Article 4A is the "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the

---

[9] True and correct copies of the Treasury Management Services Master Agreement and the Digital Banking Agreement are attached hereto as Exhibits A and B respectively. "Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

[10] Plaintiffs do so while only making general reference to First Horizon's duty to exercise ordinary care in performing services, First Horizon's ability to rely on security procedures until receiving notice they have been compromised, and First Horizon's rights to delay or refuse transactions when it deems appropriate. Plaintiffs do not cite any particular provision of any particular agreement in support of these obligations, provide any allegation of notice to First Horizon that their security credentials had been compromised or allege that First Horizon became aware of such until after the fraudulent transfers had occurred, or offer any allegations for how any breaches by First Horizon led to their purported harm. (Ex. A, at p. 9-10 and Ex, B, at p. 7-8.)

article." Fla. Stat. § 670.102 cmt; *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 197 (Fla. 1989). "The rules that emerged during the drafting of the U.C.C. 'are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions of the Article.*'" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (emphasis added in original) (quoting UCC § 4A-102). In fact, "parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims[.]" *Id.* (citation omitted). Thus, it is well recognized that common law claims that arise out of fund transfers are preempted by the UCC and subject to dismissal.[11]

While Home1st attempts to plead a breach of contract, it is explicitly grounded in First Horizon's security procedures, compliance with those procedures related to the alleged unauthorized transfers, and obligations concerning refunding the funds in question (ECF No. 1-1, ¶ 109), all of which fall squarely within the purview of Article

[11] *See, e.g., Biondi v. Branch Banking & Tr. Co.*, No. 1:18-CV-22521-UU, 2019 WL 13217964, at *5 (S.D. Fla. Feb. 7, 2019) (ruling on Florida law); *List Indus., Inc. v. Wells Fargo Bank, N.A.*, No. 17-CV-61204, 2018 WL 4334876, at *4-5 (S.D. Fla. Sept. 11, 2018) (ruling on Florida law); *Powis Parker, Inc. v. Truist Bank*, 654 F. Supp. 3d 1256, 1260 (M.D. Fla. 2023) (considering Florida law); *Nice Weather Corp. v. Bank of Am., Nat'l Ass'n*, No. 23-24893-CIV, 2024 WL 3401595, at *2-3 (S.D. Fla. Feb. 5, 2024) (ruling on Florida law); *Kazak v. Truist Bank*, 692 F. Supp. 3d 1112, 1118 (M.D. Fla. 2023) (ruling on Florida law); *see also Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-CIV, 2018 WL 1558272, at *4 (S.D. Fla. Mar. 29, 2018) (ruling on Florida law) ("At bottom, all of Capten's common-law claims rest on Capten's allegations that the Bank mishandled unauthorized wire transfer requests. As such, the Court finds Article 4A provides the exclusive remedy to address Capten's claims."); *Barents Reinsurance SA v. Truist Bank*, No. 6:24-cv-591-ACC-UAM, 2025 WL 2223190, at *5 (M.D. Fla. Jan. 24, 2025) (ruling on Florida law) ("Article 4A preempts plaintiff's common law claims based on defendant's failure to prevent the fraudulent transfer and return of funds."); *Valdes v. Customers Bank*, No. 8:19-cv-02603-VMC-AEP, 2020 WL 13357817, at *4 (M.D. Fla. Feb. 10, 2020) (holding that UCC preemption applied to plaintiff's common-law claim based on defendant's failure to prevent the fraudulent transfer).

4A. Thus, the case law makes clear that the breach-of-contract claim is precluded as a matter of law under these circumstances, requiring its dismissal with prejudice.

**E. Home1st's Gross Negligence Claim (Count III) Fails as a Matter of Law.**

Plaintiffs assert a gross negligence claim, which is an invalid cause of action under Florida law, preempted by UCC Article 4A, fails to allege a viable duty, and is barred by Florida's Independent Tort Doctrine. For each of these independent grounds, Count III must be dismissed.

First, Florida federal courts have repeatedly recognized that gross negligence is not a cause of action under Florida law. Gross negligence is a heightened standard rather than a separate claim.[12] On this basis alone, Count III should be rejected.

Second, Count III concerns the adequacy of First Horizon's response to purportedly known or suspected fraudulent activity and is devoid of the kind of wholly separate transactions or promises that Florida courts have found necessary to move a case outside of UCC Article 4A regarding unauthorized funds transfers.[13] (ECF No. 18, at ¶¶ 116-119.) Count III should therefore be dismissed for this reason as well.

---

[12] *See, e.g., Smith v. Ethicon, Inc.*, No. 4:20CV394-MW/MAF, 2020 WL 9071685, at *3 (N.D. Fla. Dec. 28, 2020) ("In other words, gross negligence is a heightened standard of proof to receive punitive damages under Florida law and not a stand-alone claim."); *Robinson v. 3M Co.*, No. 8:24-CV-00828-WFJ-AAS, 2025 WL 2061706, at *16 (M.D. Fla. July 23, 2025) ("Interestingly, Plaintiff fails to cite a single Florida Supreme Court or Florida District Court of Appeal case that demonstrates gross negligence can be pled as a standalone count. Conversely, there is ample case law indicating that gross negligence is not a standalone count, but rather a legal standard that must be met when seeking punitive damages under Fla. Stat. § 768.72(2).") (compiling federal and state case law); *In re 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19MD2885, 2023 WL 4359407, at *3 (N.D. Fla. June 14, 2023) ("The Court agrees with Defendant because "gross negligence is ... not a stand-alone claim" under Florida law.").

[13] *Compare, e.g., Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1357-58 (S.D. Fla. 2015) (holding that claims that stemmed from allegedly allowing accounts to be opened in the plaintiffs' names with forged signatures and/or improper authorization or identification were not preempted);

Third, it is well recognized that a bank's duties and obligations under governing law do not include investigating fraud, monitoring accounts, or noticing or notifying a customer of fraudulent activity.[14] Duties with respect to an account arise from the contractual relationship between the parties.[15] As found by the court in *Dickson*, a negligence claim premised on a bank's purported duties to its depositor to provide a commercially reasonable security method against unauthorized payment orders and to investigate transactions following the loss were "predicated entirely on Plaintiff's relationship to Wells Fargo as its customer, which is once again a contractual relationship." *Dickson*, 812 F. Supp. 3d at 1286-87.

Fourth and finally, the Independent Tort Doctrine bars a plaintiff from litigating contractual claims as a tort cause of action, including negligence and negligent

---

*Biondi*, 2019 WL 13217964, at *5 (allegations of failures to verify changes to account parameters and allowing improper access were insufficient to avoid preemption as they were "devoid of allegations that a third party fraudulently opened an account in Plaintiffs' name" and were "[a]t its core…allegations that BB&T was negligent in permitting unauthorized wire transfers") (compiling case law).

[14] *See, e.g.*, *RV Kountry v. Truist Bank*, No. 2:24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (noting that "[b]oth the Eleventh Circuit and the Florida Supreme Court agree that Florida law does not impose a duty on a bank to investigate fraudulent transactions" and rejecting claims that duties exist to maintain, protect and secure a customer's private and financial information); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability. **Florida law does not require banking institutions to investigate transactions."**) (emphasis added); *Lynne M. Bucklin v. Bank of Am., N.A.*, No. 2:24-CV-278-JLB-NPM, 2025 WL 1504043, at *9 (M.D. Fla. Mar. 11, 2025) ("But, even though the allegations are separate and distinct, Florida law does not impose a duty on banks to investigate transactions."); *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 548-49 (Fla. 2d DCA 2003) ("When one establishes a bank account, the bank is obligated to deposit legal transfers into the account and to honor checks and other usual debits against the account. We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.").

[15] *See McCrory Stores Corp. v. Tunnicliffe*, 140 So. 806, 807 (Fla. 1932); *MJZ Corp. v. Gulfstream First Bank & Tr., N.A.*, 420 So. 2d 396, 397 (Fla. 4th DCA 1982); *ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-CV-20595, 2025 WL 2239263, at *4-5 (S.D. Fla. Aug. 6, 2025).

misrepresentation.[16] Count III sounding in negligence vaguely alleges failures with respect to purported contractual duties. (Compare ECF No. 18, ¶¶ 103-109, and 116-119.) Plaintiffs' own allegations therefore establish that the alleged duties in question, to the degree they existed at all, were contractual, and as the numerous cases cited above have recognized, Plaintiffs are attempting to impose duties on First Horizon that Florida law does not recognize. *See also Stepakoff v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1315 (S.D. Fla. 2022); *Pastor v. Bank of Am.*, N.A., 664 F. Supp. 3d 1365, 1367–68 (S.D. Fla. 2023) ("Thus, because Pastor's claims are inextricably dependent on the duties he was owed as a customer and owner of an account with BANA, he has failed to allege that BANA 'committed [a] breach of duty independent of a breach of its contractual obligations.'"). Such claims are clearly barred by the Independent Tort Doctrine, warranting their dismissal.

[16] *See, e.g., Elec. Sec. Sys. Corp. v. S. Bell Tel. And Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("Since a breach of contract, alone, cannot constitute a cause of action in tort, the trial court properly dismissed the negligence count. It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.") (internal citation omitted); *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239-40 (Fla. 3d DCA 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations.") (citation omitted); *see also Dickson v. Wells Fargo Bank, N.A.*, No. 25-80095-CIV, 2025 WL 1517528, at *5 (S.D. Fla. May 16, 2025) (holding that the independent tort doctrine barred negligence claims against a bank for failure to maintain account privacy and security, allowing unauthorized access and transfers, and failing to recognize red flags); *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353-54 (S.D. Fla. 2021) (finding a claim for negligent misrepresentation is likewise governed by the independent tort doctrine).

### F. **Counts IV, V, VI, and VII—Plaintiffs' Claims for Negligent Misrepresentation and Promissory Estoppel—Must Be Dismissed With Prejudice.**

Plaintiffs next plead two counts for negligent misrepresentation and two counts for promissory estoppel, all premised on the same statements and the same acts of reliance. Such claims are barred by the existence of express agreements governing the operation of Home1st's accounts and the services provided by First Horizon, the lack of allegations as to the required elements of such causes of action, the lack of any duty owed to Ms. Lentini-Lopez, and the lack of any definite promise. Accordingly, these counts all must be dismissed.

Counts IV and V, by Home1st and Ms. Lentini-Lopez respectively, are for negligent misrepresentation, both premised on statements allegedly made by Ms. Baez that the ACH transactions had been reversed, Home1st's accounts would be restored, and First Horizon would take care of the situation. (ECF No. 18, ¶¶ 124-125, 135-137.) Plaintiffs claim that these statements were false and that Plaintiffs relied on them in depositing $106,335.35 and $50,000, "continuing operations based on the stated reversal and restoration plan, and delaying or altering other mitigation measures," and "undertaking additional personal financial obligations that she otherwise would not have undertaken, or would have addressed differently." (*Id.* at ¶¶ 126, 131, 138, 143.)

Counts VI and VII are for promissory estoppel, again by Home1st and Ms. Lopez respectively, and again premised on Ms. Baez's purported statements, claiming that these amounted to definite promises that First Horizon "would restore Home1st's affected accounts and take care of the situation after the outgoing ACH transactions

had been reversed," and citing the same alleged actions in reliance by Home1st and Ms. Lopez. (*Id.* at ¶¶ 147-151, 157-160.)

As an initial matter, Plaintiffs' claims are barred given the existence of express agreements between the parties.[17] Plaintiffs' claims are grounded in representations allegedly made concerning reversal efforts and obligations to restore accounts. Any such representations concern Home1st's account and fall within the scope of the parties' banking relationship, meaning they are contractual and must be brought as such. Additionally, the Treasury Management Services Master Agreement on which Plaintiffs heavily rely specifically states in its Service Terms and Conditions, Automated Clearing House (ACH) Transaction Service, Section 11: "Any credit or consideration given by Bank to Client with respect to any Transaction request shall be deemed provisional, and Bank shall be entitled to revoke same without prior notice in the event the Transaction is returned, rejected, revoked or charged back to Bank." *See*

[17] *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353-54 (S.D. Fla. 2021) (finding a claim for negligent misrepresentation is likewise governed by the independent tort doctrine); *Dangeles v. New York Life Ins. Co.*, No. 25-CV-80899, 2026 WL 1668902, at *6 (S.D. Fla. Apr. 30, 2026) ("Plaintiff's negligent misrepresentation, fraudulent misrepresentation, and promissory estoppel claims all arise from NYL's communications regarding the Policy's death benefit value and the availability of reinstatement, subjects governed entirely by the Policy's express terms. Plaintiff identifies no tort duty independent of NYL's contractual obligations, and the alleged misstatements concern matters addressed directly by the Policy, namely how the death benefit is calculated and under what conditions reinstatement may occur."); *New York Packaging II LLC v. Private D Capital Group Corp.*, No. 22-20276-CIV, 2023 WL 2306690, at *9 (S.D. Fla. Mar. 1, 2023) ("There is no doubt that RediBag may plead a promissory estoppel claim in the alternative to its breach of contract claims, but it must also allege in the alternative that the subject contracts were invalid."); *Just Play, LLC v. FitzMark, Inc.*, No. 20-80663-CIV, 2021 WL 4973588, at *2 (S.D. Fla. Sept. 23, 2021) ("Judgment as a matter of law also is unwarranted on Plaintiff's alternative claims for promissory estoppel or unjust enrichment. Defendant is correct that the existence of an express contract bars a party from also obtaining relief for the same subject matter covered by the contract under quasi-contractual theories of liability."); *Myers v. 3073 Horseshoe Drive, LLC*, No. 2:23-CV-95-JES-NPM, 2024 WL 4040834, at *1-2 (M.D. Fla. Sept. 4, 2024) (finding a claim for promissory estoppel is not available when there is a written contract covering the disputed promise).

Ex. A. Moreover, Section 4.2 of the Wire Transfer Service section of that agreement states, "Once a Transfer Request has been released, the transfer will be final and not subject to cancellation, amendment or reversal by Client, unless the beneficiary bank consents to such request. Bank will not be liable to Client for any damages resulting from the failure of the beneficiary or any intermediary bank to amend or recall a transfer." *Id.* Accordingly, Plaintiffs' claims fall plainly within the scope of the parties' written contracts and are, therefore, subject to dismissal.

Moreover, a negligent misrepresentation claim requires: (1) a misrepresentation of a material fact; (2) lack of knowledge by the representor as to the truth or falsity of the representation, or circumstances under which he ought to have known of its falsity; (3) intent by the representor that the representation induce another to act on it; and (4) injury to the plaintiff as a result of acting in justifiable reliance on the misrepresentation. *Oakwood Ins. Co. v. N. Am. Risk Servs., Inc.*, No. 618CV437ORL31KRS, 2018 WL 3381284, at *2 (M.D. Fla. July 11, 2018). Misrepresentations must be of past or existing fact rather than future events or intent, nor can they be opinions or omissions.[18] To plead promissory estoppel, a party must allege: "(1) a promise made by the promisor; (2) which the promisor should reasonably

---

[18] *Barrett v. Scutieri*, 281 Fed. Appx. 952, 954 (11th Cir. 2008) ("Barrett only vaguely alleged that Scutieri falsely stated an intention to collaborate on the implementation of a reorganization plan for NetFax. But to give rise to an action for fraud, the false statement must be about a past or existing fact, not a future action."); *In re Palm Beach Fin. Partners, L.P.*, No. 09-36379-BKC-PGH, 2012 WL 12865225, at *8 (Bankr. S.D. Fla. July 3, 2012); *Extreme Crafts VII, LLC v. Cessna Aircraft Co.*, No. 10-80292-CIV, 2011 WL 13175086, at *5 (S.D. Fla. Oct. 3, 2011), *aff'd*, 479 Fed. Appx. 247 (11th Cir. 2012); *Rothis v. M & I Marshall & Isley Bank*, No. 8:10-CV-446-T-23EAJ, 2010 WL 3893960, at *5 (M.D. Fla. Sept. 29, 2010); *Shady Hills Energy Ctr., LLC v. Seminole Elec. Coop., Inc.*, No. 8:20-CV-81-WFJ-JSS, 2022 WL 4774450, at *7 (M.D. Fla. Oct. 3, 2022).

expect to induce action or forbearance on the part of the promisee; (3) that in fact induced such action or forbearance; and that (4) injustice can be avoided only by enforcing the promise."[19] The promise must be "definite, of a substantial nature, and established by clear and convincing evidence."[20] General promises to resolve issues are not sufficient, and justifiable reliance is required. A plaintiff cannot justifiably rely on vague or indefinite promises inconsistent with contractual terms.[21]

The alleged statements in question by Ms. Baez are a classic form of general consumer representative statements to make things right in the future, are not about material existing facts, and do not constitute definite promises. Plaintiffs do not even attempt to allege that Ms. Baez intended that Plaintiffs would rely on her statements or offer any particular explanation for how she knew or ought of have known they were false.[22] Moreover, the only specific allegations that Plaintiffs offer as to their

---

[19] *Adria MM Productions, Ltd. v. Worldwide Entm't Group, Inc.*, No. 17-21603-CIV, 2018 WL 4268886, at *8 (S.D. Fla. Sept. 6, 2018) (internal quotations omitted); *see also Funderburk v. Fannie Mae*, 654 F. App'x 476, 478 (11th Cir. 2016) ("To establish promissory estoppel, the elements are: (1) defendant made certain promises, (2) that it should have expected that plaintiff would rely on the promises, and (3) that plaintiff did rely on the promises to his detriment.").

[20] *Swerhun v. Gen. Motors Corp.*, 812 F. Supp. 1218, 1221 (M.D. Fla. 1993) (quoting *W.R. Grace and Co. v. Geodata Servs.*, 547 So.2d 919, 920 (Fla. 1989)); *see also W. Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 F. App'x 482, 485 (11th Cir. 2007).

[21] *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, No. 6:09-CV-1999, 2011 WL 653524, at *25 (M.D. Fla. Feb. 14, 2011); *Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC*, No. 16-25079-CIV, 2017 WL 3822056, at *4 (S.D. Fla. Aug. 30, 2017); *W.R. Grace*, 547 So. 2d at 924; *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1349–51 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000).

[22] Under Federal Rule of Civil Procedure Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must therefore allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Stated differently, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th

reliance are that they deposited money in Home1st's account to help cover its financial obligations. Plaintiffs offer no justification for how placing money in one's own account could constitute detrimental reliance, much less how First Horizon benefited from it. As found in *Polo North Country Club, Inc. v. Wells Fargo Bank, N.A.*, No. 9:16-CV-80432-WPD, 2016 WL 11819825, at *4 (S.D. Fla. June 24, 2016), a person cannot be found to have detrimentally relied on a promise by ultimately doing what they would have done anyway or were required to do by law. Finally, Ms. Lentini-Lopez's claims in her individual capacity fail for the additional reason that the bank did not make any alleged statements to her in her personal capacity, and the bank owed no duty to her individually as a non-customer.

For these reasons, Counts IV, V, VI, and VII should be dismissed.

**G. <u>Count VIII for Declaratory Judgment is Preempted and Redundant</u>.**

Lastly, Plaintiffs' claim for declaratory relief, alleging a dispute over whether Home1st should be reimbursed for the fraudulent transfers pursuant to the standards of an Article 4A UCC claim, is preempted, redundant, and should be dismissed.

Plaintiffs seek declarations that the funds transfers at issue would be unauthorized and ineffective unless the standards under Section 670.202 of the UCC are satisfied, that First Horizon should not be allowed to rely on its security procedures

---

Cir. 1997)). "A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127-28 (11th Cir. 2019) (emphasis added). Claims that sound in fraud, including negligent misrepresentation, must satisfy this heightened pleading standard. *See, e.g., Lamm v. State Street Bank & Trust*, 749 F.3d 938, 951 (11th Cir. 2014); *McGee v. JP Morgan Chase Bank*, *NA*, 520 F. App'x 829, 831 (11th Cir. 2013).

if there was notice that they were compromised, that contractual terms should not be used to excuse "bad faith, willful misconduct, gross negligence, or nonwaivable statutory duties," that First Horizon must refund the money taken from Home1st's account, and that First Horizon "may not collect, offset, adversely report, or enforce an alleged deficiency attributable to the disputed transactions except as permitted after adjudication of the parties' rights." (ECF No. 18, ¶¶ 169-170.)

The declaratory relief claim is plainly preempted by Home1st's UCC allegations, but, even if not, Plaintiffs' request for a declaration should still be dismissed as redundant because all the issues identified are controlling and underlying Plaintiffs' other claims. "'Courts have broad discretion to decide whether to entertain a request for a declaratory judgment' and 'frequently decline to entertain' them when the request 'is redundant with an earlier claim.'" *Benford v. Taylor*, No. 8:25-CV-3425-KKM-LSG, 2026 WL 696832, at *8 (M.D. Fla. Mar. 12, 2026) (quoting *RLI Ins. Co. v. Coastline Tile of Pinellas, LLC*, 591 F. Supp. 3d 1182, 1190 (M.D. Fla. 2022)). Each of the issues upon which Plaintiffs seek a ruling will be resolved as a necessary element of Plaintiffs' other causes of action, and courts have repeatedly used their discretion to dismiss declaratory relief counts when the issues and remedies would be resolved in other pending claims.[23] As Plaintiffs' declaratory relief cause of action serves no useful

---

[23] *See, e.g.*, *Benford*, 2026 WL 696832, at *8; *RLI Ins. Co.*, 591 F. Supp. 3d at 1190; *Sec. Nat'l Ins. Co. v. Hendrik Uiterwyk, P.A.*, 725 F. Supp. 3d 1308, 1323 (M.D. Fla. 2024); *Fluid Control Specialties, Inc. v. Watts Water Techs., Inc.*, No. 618CV1287ORL41DCI, 2019 WL 12304386, at *3 (M.D. Fla. May 20, 2019); *Ali v. Ctr. Life Ins. Co.*, No. 617CV996ORL41TBS, 2018 WL 3822007, at *2-3 (M.D. Fla. Mar. 8, 2018).

purpose and is merely redundant of Plaintiffs' other claims, Count VIII should be dismissed.

## CONCLUSION

As detailed above, Plaintiffs' claims fail for numerous reasons, with multiple bases for dismissing each individual cause of action. These issues demonstrate as a matter of law that the claims fail to state a valid claim for relief. Additionally, as explained above, further amendment is futile. Plaintiffs have already attempted once to amend to avoid largely the same arguments. For these reasons, the Amended Complaint should be dismissed.

*WHEREFORE*, Defendant, First Horizon Bank, respectfully requests that this Court enter an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Amended Complaint, along with granting any and all additional relief this Court deems just and proper.

Submitted September 30, 2026

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, First Horizon*

By: */s/ Spencer D. Leach*
David B. Levin (Lead Counsel)
Florida Bar No.: 26394
dlevin@bakerdonelson.com
Spencer D. Leach
Florida Bar No.: 110753
sleach@bakerdonelson.com